UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| AARON GILLUM, Petitioner, v. JAMES D. HARTLEY, Respondent. | ) | 1:09-CV-00147 AWI JMD HC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>OBJECTIONS DUE WITHIN THIRTY (30) DAYS |

Aaron Gillum (hereinafter "Petitioner") is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a jury verdict finding Petitioner guilty of second degree murder in 1987. The trial court sentenced Petitioner to a term of fifteen years to life in prison. The instant petition does not challenge Petitioner's conviction. Rather, the petition stems from the decision by the California Board of Parole Hearings (the "Board") to grant Petitioner parole. Petitioner appeared before the Board on February 9, 2007. On June 21, 2009, the Governor reviewed and reversed the Board's decision granting Petitioner parole. Petitioner contends that the Governor's reversal violates his constitutional rights.

Petitioner filed a petition for writ of habeas corpus with the San Mateo County Superior Court challenging the Governor's reversal. (*See* Resp't Answer Ex. 1.) The Superior Court issued a

reasoned opinion denying the petition on June 9, 2008.[1] (*See* Resp't Answer Ex. 2.)

Petitioner also filed petitions for writ of habeas corpus with the California Court of Appeal and the California Supreme Court. (Resp't Answer Exs. 3, 5.) The California Court of Appeal and Supreme Court issued summary denials of the petitions.[2] (*See* Resp't Answer Ex. 4, 6.)

On January 21, 2009, Petitioner filed the instant federal petition for writ of habeas corpus.

Respondent filed a response to the petition on June 22, 2009, to which Petitioner filed a traverse on July 24, 2009.

**FACTUAL BACKGROUND**[3]

> On February 25, 1986, the Petitioner strangled Darwin Crigger and dragged his body onto railroad tracks, where Mr. Crigger was hit by a train. Mr. Crigger's head was crushed and his body was mutilated by the train. The cause of death was the expulsion of cranial contents caused by the impact with the train.[4] The Petitioner and Mr. Crigger were transients who had been drinking together near railroad tracks. On the night of the murder, officers responded to a report that an intoxicated person was lying on the railroad tracks. Officers found Mr. Crigger dead on the tracks. Officers also found the Petitioner walking in the area.
>
> The Petitioner was arrested, but was released due to lack of evidence. At the time of his arrest, he had a blood alcohol level of .17 percent, and Mr. Crigger's blood was at .38 percent. Within a few months of the Petitioner's release, he went to Nevada and worked at a gold mine. While there, he discussed the murder with his employer and described certain details of a fight preceding the killing. The Petitioner revealed that he had gotten into an argument with the victim that escalated into a fight. While fighting, the Petitioner choked the victim and dragged his body onto the nearby train tracks, believing that he was already dead, in order to conceal the crime. The Petitioner was arrested on October 15, 1986.
>
> The Petitioner admitted at the hearing that he habitually drank heavily, which contributed to the crime. At the time of the crime, he had been an alcoholic for

---

[1] Petitioner had previously filed a petition for writ of habeas corpus with the San Mateo County Superior Court and the California Court of Appeal contesting the Governor's decision but had failed to attach a transcript of the parole hearing. The State courts denied those petitions without prejudice.

[2] Respondent admits that Petitioner has exhausted his state court remedies and that the petition was timely filed. (Answer at 3.)

[3] These facts are derived from the San Mateo County Superior Court's opinion issued on June 9, 2008. (Answer Ex. 2.) Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *Moses v. Payne*, 555 F.3d 742, 746 n.1 (9th Cir. 2009).

[4] The Petitioner stated in the hearing that the victim was already dead by the time he dragged his body to the tracks. However, the Board noted that the statement of facts from the probation report was incorporated by reference. The Petitioner has included a copy of the probation report, but the Governor cited to it for the cause of death. Because the stated cause of death implies the victim was still alive when placed on the tracks, this Court assumes that fact.

approximately 10 years. The Petitioner began drinking [at] about age 10, and had an alcohol abuse problem beginning at about age 12. The Petitioner admits, and his psychological evaluations indicate, that he had frequently become violent when he is under the influence of alcohol. The Board cited numerous alcohol-related violent incidents, including the commitment offense, the fact that the Petitioner was discharged from the army because of violence while drunk, violence committed against his Nevada employer while both were drinking, and the fact that he was kicked out of his parents house while a young adult because of a fight he got into with a houseguest while both were drinking. The Petitioner's mental health evaluation cite many of these incidents as well.

The Petitioner and his mental health evaluators noted that he has not consumed alcohol since being incarcerated. His 2005 psychological evaluation notes:

> His risk of harm to others is below average for parolee population, and he can be expected to remain violence free if returned to society to the extent that he can remain clean and sober on the streets where the consequences for alcohol in prison are no longer a deterring factor.

The Petitioner did not begin participating in Alcoholics Anonymous until 1999, twelve years after he was incarcerated, and then participated until 2005. He is not currently participating in a group, but is on the waiting list for one, and is instead participating in correspondence AA course. When asked by the Board, the Petitioner was not able to recite any of the 12 steps. The Petitioner's parole plans do not include explicit plans to participate in an AA group. The Petitioner indicate[d] that he doesn't drink and will never drink again, and that his brother, with whom he planned to live, would require him to go to AA meetings.

The Board characterized the Petitioner as a "violent drunk," noted that Petitioner's inability to recite any of the 12 steps indicated his lack of interest in the program, and noted its concern about the Petitioner's sobriety when it stated that they were "very concerned as to [Mr. Gillum's] ability to . . . sustain sobriety once he leaves prison."

When the Board asked Petitioner where he stands in taking full responsibility for the crime, he stated:

> Well, I'd like to say two things. The Commissioner brought up how [the Petitioner's Nevada employer] found out that I had killed someone, and I told him I started crying. And that's because of what happened and how I felt about it. And remorse–these self-helps are really good, unfortunately, they're not written by someone in my position so one thing they don't–I don't think they deal with really well is being able to forgive yourself.
>
> They keep talking about that, but that sounds easy. It's really not. One day I was going along and I was talking about what I am going to do for my future. And, you know, it comes out of the blue sometimes, and I realize this man didn't have a future because of me. And there's just no way to explain how much that hurts.
>
> And to show remorse, well, I'm not sure how to do that, but, boy, I sure feel it. And it's really hard to forgive myself even though your steps say you're supposed to.

When given a chance to tell the Board why he should be granted parole, the Petitioner

addressed the issue of remorse stating:

> I have now paid 20 years of my life for that. And as far as I see, I have paid my debt to society for that crime. What you see in front of you now is an older man. He's mature. He's tired. He is absolutely sorry for what happened. I can never take it back. I can never do anything about it. But I think the main issue here is that I killed a man while drinking. My fault. Nobody else's.

In the Petitioner's most recent psychological evaluation, the evaluator noted:

> Mr. Gillum[‘s] statements regarding his remorse focus on himself...remorse for himself, how hard it has been for him, and etc. He added one sentence about the victim and those he left behind. He let 12 years go by before starting AA and he did not participate in NA. He did not indicate AA/NA in his Plans if Granted Release. Mr. Gillum needs to participate in AA and NA for the rest of his life, in and out of prison. He can address his remorse issues within the 12 step process.

The Board noted these comments.

(Resp't Answer Ex. 2, Op. Super. Ct. San Mateo County, at 2-6.)

## DISCUSSION

### I. Jurisdiction

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution and Petitioner is currently incarcerated at California Substance Abuse Treatment Facility in Corcoran, which is located in Kings County. (Pet. at 2.) As Kings County falls within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus. *See* 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a State court convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

### II. AEDPA Standard of Review

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's

enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the AEDPA's enactment and is consequently governed by the provisions of the AEDPA. *See Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1))*, overruled in part on other grounds*, *Hayward v. Marshall*, 603 F.3d 546, 555 (9th Cir. 2010) (en banc); *see Lockyer*, 538 U.S. at 70-71.

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition as Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. *See Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) *overruled in part on other grounds*, *Hayward*, 603 F.3d at 555. As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id*. (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id*. Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer*, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents need be reasonably applied, we may look for guidance to circuit precedents"); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999) ("because of the 1996 AEDPA amendments, it can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal Constitutional issue....This does not mean that Ninth Circuit caselaw is never relevant to a habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established'"). Furthermore, the AEDPA requires that the Court give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). A federal habeas court is bound by a state's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

The initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision to determine whether that decision was contrary to

or an unreasonable application of clearly established federal law. *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Here, the San Mateo County Superior Court, the California Court of Appeal, and the California Supreme Court reached the merits of Petitioner's claims. As both the California Court of Appeal and the California Supreme Court summarily denied Petitioner's claims, the Court looks through those decisions to the last reasoned decision; namely, that of the San Mateo County Superior Court. *See Ylst v. Nunnemaker*, 501 U.S. at 804.

**III. Review of Petitioner's Claims**

The petition for writ of habeas corpus sets forth five grounds for relief, all relating to the Governor's decision to reverse the Board's grant of parole. In his first ground for relief, Petitioner contends that he has a protected liberty interest in parole and that the Governor's decision does not satisfy the some evidence standard required under due process. Petitioner contends in his second ground for relief that the Governor violated his right to due process by denying him parole. In his third ground for relief, Petitioner contends that the Governor's decision was not a fair and impartial decision. Petitioner's fourth ground for relief alleged his constitutional rights were violated by the Governor's reliance on unchanging factors. Lastly, Petitioner contends that the evidence cited by the Governor has no basis in fact. Petitioner's claims are all centered on the denial of Petitioner's due process rights. Thus, the Court will address these interrelated claims in the same section.

The Court analyzes the claim that Petitioner's due process rights have been violated in two steps. "'[T]he first asks whether there exist a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Sass*, 461 F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty interest in a parole date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981). Respondent argues that Petitioner does not have a federally protected liberty interest in parole. The Ninth Circuit Court of Appeals has recognized that "[i]f there is any right to be release on parole, or to release in the absence of some evidence of future dangerousness, it has to arise from substantive state law creating a right to release." *Hayward*, 603 F.3d at 555. The Ninth Circuit further recognized that "[t]here is no general federal constitutional 'some evidence' requirement for denial of parole, in the absence of state law creating an enforceable right to parole." *Id*. at 559. The

*Hayward* court's finding, that there exists no free standing federal due process right to parole or right to some evidence of current dangerousness, contained the consistent and continual caveat that state law may in fact give rise to federal protection for those rights. As later noted by the Ninth Circuit, "state created rights may give rise to liberty interests that may be enforced as a matter of federal law." *Pearson v. Muntz*, 606 F.3d 606, 609 (9th Cir. 2010) (per curiam) (citing *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). The *Pearson* court found that, "*Hayward* necessarily held that compliance with state requirement is mandated by federal law, specifically the Due Process Clause" as "[t]he principle that state law gives rise to liberty interests that may be enforced as a matter of federal law is long-established." *Id.*

As noted by the Ninth Circuit in *Hayward*, logic dictates that the next question is whether California's parole scheme gives rise to a liberty interested enforced as a matter of federal law. The Ninth Circuit has definitively concluded that "California has created a parole system that independently requires the enforcement of certain procedural and substantive rights, including the right to parole absent 'some evidence' of current dangerousness." *Pearson*, 606 F.3d at 611 (citing *Hayward*, 603 F.3d at 562); *see also Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir. 2010) (noting that "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of that state").

Consequently, the inquiry that a federal habeas court must undertake in determining whether the denial of parole comports with the requirement of federal due process is "whether the California judicial decision approving the governor's [or parole board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" *Hayward*, 603 F.3d at 563 (quoting 28 U.S.C. § 2254(d)(1)-(2)) (footnotes omitted). As the Ninth Circuit recently observed in *Cooke*:

> Under California law, "the paramount consideration for both the Board and the Governor" must be "whether the inmate currently poses a threat to public safety and thus may not be released on parole,"[citation], and "the facts relied upon by the Board or the Governor [must] support the ultimate decision that the inmate remains a threat to public safety.

*Cooke*, 606 F.3d at 1214 (quoting *In re Lawrence*, 44 Cal. 4th 1181, 1210, 1213 (2008)); *see also*

Cal. Code Regs. tit. 15, § 2402(a) ("[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole). The California Supreme Court in *Lawrence* held that, "[t]he relevant determination for the Board and the Governor is, and always has been, an individualized assessment of the continuing danger and risk to public safety posed by the inmate." *In re Lawrence*, 44 Cal. 4th at 1227 (noting that "mere recitation of the circumstances of the commitment offense, absent articulation of a rational nexus between those facts and current dangerousness, fails to provide the required "modicum of evidence" of unsuitability"). In setting forth the standard for federal habeas courts, the Ninth Circuit reiterated this principle, stating that "[i]n sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" *Cooke*, 606 F.3d at 1214(emphasis in original) (quoting *In re Lawrence*, 44 Cal. 4th at 1221).

Here, the Superior Court of California, San Mateo County, was the last State court to have issued a reasoned opinion in Petitioner's case. (Resp't Answer Ex. 2.) The Superior Court noted that:

> [T]here was evidence in the record supporting the reasons for the Governor's conclusion that the Petitioner would pose an unreasonable risk of danger to society if released. The Governor's decision was based on the nature of the crime, the Petitioner's lack of commitment to substance abuse treatment, and the Petitioner's apparent lack of remorse.

(Resp't Answer Ex. 2 at 8.) The Superior Court rejected Petitioner's contention that the Governor's reliance on unchanging factors violated his constitutional rights, noting that the Governor's decision was not based solely on immutable factors. The Court does not find this to be an objectively unreasonable application of the California some evidence standard. The California Supreme Court has itself held that reliance on unchanging factors is permissible where those immutable factors are probative of Petitioner's current dangerousness. *See In re Lawrrence*, 44 Cal. 4th at 1221 (citing Cal. Code Regs. tit. 15, § 2281(a)) ("In sum, the Board or the Governor may base a denial-of-parole decision upon the circumstances of the offense, or upon other immutable facts such as an inmate's criminal history, but some evidence will support such reliance only if those facts support the ultimate conclusion that an inmate *continues* to pose an unreasonable risk to public safety"). Here, the San

Mateo Superior Court discussed in detail how evidence of those three factors (insufficient participation in self-help, lack of remorse, and the commitment offense) were probative of Petitioner's current dangerousness. In discussing how the non-immutable factors bore a rational nexus to current dangerousness, the Superior Court stated:

> The evidence clearly establishes that there is a relationship between the Petitioner's excessive consumption of alcohol and his commission of acts of violence. Thus, the Governor rationally concluded that, unless Petitioner's substance abuse problem is fully treated, his release would pose an unreasonable risk to society. The Petitioner claims that his substance abuse problem is under control, as demonstrate by the fact that he has not consumed alcohol during his incarceration and that he has participated in AA either in groups or through a correspondence course, since 1999. However, comments in his mental health evaluation support an inference that abstaining during incarceration is not necessarily predictive of abstention upon release because of the deterrent effect of the much greater consequence of consuming alcohol during incarceration. Furthermore, the Petitioner's inability to name a single step of the 12 step process belies his commitment to AA.
>
> The evidence also establishes that the Petitioner's remorse may be less than genuine. His most recent mental health evaluation noted that the Petitioner's comments about remorse were self-centered, focusing more on how the crime had affected him than on how it had affected the victim. The Petitioner's unscripted comments during the hearing revealed a similar self-centered focus, stating that he had "paid his debt" and that he was having difficulty forgiving himself.

(Resp't Answer Ex. 2 at 8-9.)

As the Ninth Circuit noted, "courts in this circuit . . . need only decide whether the California judicial decision approving the governor's [or Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" *Hayward*, 603 F.3d at 562-63. While the Court finds the State court's determination that Petitioner lacked genuine remorse debatable, the Court does not find that it was an unreasonable determination of fact in light of the evidence.[5]

Similarly, the State court's finding that Petitioner did not sufficiently participate in self-help is supported by the record and constitutes some evidence of Petitioner's current dangerousness.[6]

---

[5] The Court's interprets Petitioner's statements, which naturally has a greater focus on the consequences to Petitioner of his actions, to also indicate genuine remorse for the victim as Petitioner has considered the consequences of his actions on the victim. (Tr. Parole Hearing at 105-106.)

[6] For this reason, Court finds Petitioner's fifth ground, that there was no basis in fact for the Governor's decision, to be erroneous.

Petitioner had only begun participating in Alcoholics Anonymous in 1999, a mere eight years prior to the parole hearing and was not currently in the program. (Tr. Parole Hearing at 79-81, 94). More importantly, Petitioner had no active plans to do so if released on parole and could not name any of the steps in the program. (Id. at 94-99.) When examined in light of Petitioner's history of alcohol related violence, the Superior Court reasonably relied on Petitioner's relatively recent participation in Alcoholics Anonymous, his limited retention of the program's lessons, and his failure to include the program in his future plans as evidence of Petitioner's current dangerousness. The Court finds that the evidence pertaining to this factor alone is sufficient to meet the some evidence standard, which is a "deferential standard or review requir[ing] us to credit the Governor's findings if they are supported by a modicum of evidence." *In re Lawrence*, 44 Cal. 4th at 1227

Petitioner's failure to sufficiently participate in self-help renders the circumstances of the commitment offense probative towards Petitioner's current dangerousness. The Court does not find this to be an objectively unreasonable application of the California some evidence standard. The Superior Court's decision provided the rational nexus between the circumstances of the commitment offense and Petitioner's current dangerousness that the California Supreme Court found lacking and therefore fatally defective in *In re Lawrence*, 44 Cal. 4th at 1227. The *In re Lawrence* court found that the Governor's decision did not meet the some evidence standard as it failed to relate "the commitment offense to current circumstances or suggested that any further rehabilitation might change the ultimate decision that petitioner remains a danger" as "mere recitation of the circumstances of the commitment offense, absent articulation of a rational nexus between those facts and current dangerousness, fails to provide the required 'modicum of evidence' of unsuitability." *Id*. As emphasized by the Superior Court, Petitioner's alcoholism played a prominent role in the commitment offense as well as other pre-incarceration acts of violence. The Board and Petitioner acknowledged that Petitioner was "a violent drunk" as demonstrated by Petitioner's pre-incarceration history, which contained numerous incidents of alcohol related violence. (Tr. Parole Hearing at 22-29.) Thus, the State court reasonably found that in light of Petitioner's insufficient participation in Alcoholics Anonymous, the prominent role alcoholism had played in Petitioner's previous violent conduct was currently relevant towards determining Petitioner's dangerousness. Consequently,

Petitioner's insufficient self-help participation bears directly on his current dangerousness as his alcoholism was the single motivating factor in the commitment offense and had motivated precious violent conduct. As the California Supreme Court noted:

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of *current* dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

*Id*. at 1214 (emphasis in original).

Thus, the State court's decision was not objectively unreasonable as the records contains "more than the crime or its circumstances alone to justify the Board's or the Governor's finding of current dangerousness." *Cooke*, 606 F.3d at 1214.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated: July 12, 2010** **/s/ John M. Dixon**
UNITED STATES MAGISTRATE JUDGE